1WILLIAM A. CULPEPPER, Judge Pro Tem.
This court granted writs to review the denial of motions for summary judgment. At issue is a purported sale of stock of Slocum-Stevens Insurance Agency, Inc. by the plaintiff, Jerry Slocum, to George Stevens and then from Stevens to Crick Insurance Agency, Inc. Slocum claims that his sale of the stock to George Stevens was, in fact, a simulation and that Stevens, therefore, did not own the stock and could not sell it to Crick. Slocum brought this suit to recover the stock or, in the alternative, part of the purchase price that Crick paid to Stevens, plus damages and attorney’s fees. Made defendants are Slocum Stevens Insurance Agency, Inc., Crick Insurance Agency, Inc., George Stevens, Sylvia Stevens and Buford Crick. All defendants filed motions for summary judgment dismissing plaintiffs’ suit. The trial Judge denied the summary judgments on the grounds that there are genuine issues of material fact. Applications for writs were filed only by defendants Crick Insurance Agency, Inc., Buford Crick and Slocum-Stevens Insurance Agency, Inc. Neither George Stevens nor Sylvia Stevens applied for writs.
jaFACTS
The following facts are shown by documents filed in support of or opposition to the motions for summary judgment. In January of 1988 A.J. Slocum and George Stevens organized a corporation known as Slocum-Stevens Insurance Agency, Inc. (Slocum-Ste *1158 vens Agency). As of September of 1990, the only shareholders were A.J. Slocum and George Stevens, each owning 50 of the total of 100 outstanding shares. By authentic act dated September 28th, 1990, Slocum sold to Stevens his 50 shares for a stated price of $3,500.00 and other valuable considerations, receipt of which was acknowledged by Slocum.
It is Slocum’s contention that his sale of the stock to Stevens was a simulation, that no consideration was paid or received, that Slocum did not intend to sell the stock nor did Stevens intend to purchase the stock, and that the intent and purpose of the September 28th, 1990 act of sale of stock was to conceal Slocum’s assets from his creditors, in particular a bank to whom Slocum owed approximately $700,000.00. Slocum contends that Stevens agreed that after Slocum settled his difficulties with his creditors, Stevens would reconvey the 50 shares back to Slocum. Documents filed in opposition to the motion for summary judgment show that Slocum’s lawyer actually drafted a second document, in the nature of a counterletter, by which Stevens conveyed to Slocum 50 shares of stock, but this second document was never signed. Slocum’s explanation is that his lawyer advised that he should not participate in any simultaneous signing of the second document, since he might have to be a witness in the future for the purpose of persuading creditors that Slocum had truly divested himself of his stock.
laStevens contends the September 28th, 1990 sale of stock by Slocum to Stevens was valid, and that the $3,500.00 price was paid to Slocum. In support of this contention, Stevens filed in the record a copy of a check, dated September 28,1990, drawn on Slocum-Stevens Insurance Agency, Inc. in the sum of $3,500.00 payable to A.J. Slocum. It is Slocum’s contention that this check was to reimburse him for certain expenses of Slocum-Stevens Insurance Agency.
During August of 1991, Stevens started negotiations with Buford J. Crick (hereafter CRICK), President of Crick Insurance Agency, Inc. (hereafter CRICK AGENCY), to sell the stock of Slocum-Stevens to Crick Agency. Stevens represented to Crick that he was the owner of 100% of the stock of the Slocum-Stevens Agency, as was shown by the stock certificates in his possession. There was no indication on the certificates of any outstanding interest owned by Slocum or anyone else.
Slocum learned of the negotiations between Stevens and Crick, and on September 16th, 1991, Slocum made a phone call to Crick advising Crick that Slocum owned an interest in Slocum-Stevens Agency. Also on September 16th, 1991, Slocum’s attorney made a phone call to Crick, advising that Slocum owned an interest in Slocum-Stevens Agency. After receiving these calls, Crick consulted with his attorney who checked the stock certificates, the corporate records of Slocum-Stevens Agency, the records of the Secretary of State and the records of the Clerk of Court of Rapides Parish. Crick’s attorney found no record of I .¡any interest owned by Slocum in the stock. Crick and his attorney also questioned Stevens, who assured them that he was the owner of all of the stock in the Slocum-Stevens Agency. After completing these investigations, Crick Agency purchased all of the outstanding shares of stock of Slocum-Stevens Agency from George Stevens on November 5, 1991 for $75,000 cash and other considerations. This suit was filed approximately eight months after the sale was consummated.
CRICK AGENCY’S MOTION
This suit involves two purported stock transfers, a sale or simulated sale of fifty shares in Slocum-Stevens from Jerry Slocum to George Stevens and the subsequent sale of one hundred shares of Slocum-Stevens stock from George Stevens to the Crick Agency. The propriety of the summary judgment sought by Crick Agency depends upon: 1) whether the status of the first transaction as a simulation affects the second transaction by divesting George Stevens of any transferable interest in the stock; and, 2) whether knowledge of Buford Crick that the first transaction was a simulation prevents the Crick Agency from availing itself of the protection of the Uniform Stock Transfer Act, specifically La.R.S. 12:601.
*1159 If Crick Agency is protected by LA. R.S. 12:601, then it is entitled to summary judgment. That statute reads as follows:
“The person, firm, or corporation, in whose name a certificate representing shares of stock stands, or to whom a certificate is endorsed, whether in full or in blank, and who has possession of said certificate, shall be regarded as the legal owner. The legal owner has full power to pledge, sell or otherwise dispose of said stock. No person, corporation, firm or transfer agent shall be responsible to any one claiming any interest in, or ownership of, said shares, or any part thereof, by virtue of any undisclosed or latent legal or conventional title or interest therein.” (emphasis supplied).
IfiThe purpose of this statute, rather than to establish the requirements for a valid and irrevocable transfer of stock, is to provide protection for third persons who deal with the record owners of the stock and also to establish when one may be considered the record owner. Succession of Dunham, 408 So.2d 888, 893 (La.1981). However, this statute only protects third persons from someone claiming an interest in or ownership of shares when that claim is “undisclosed or latent.”
If the telephone conversations between Buford Crick and Jerry Slocum and Slocum’s attorney amount to disclosure to Crick Agency of Slocum’s claimed interest in the stock purchased from Stevens, then La.R.S. 12:601 does not afford any protection to Crick Agency.[1] However, disclosure of a claim or interest requires the existence of a valid legal or conventional title or interest. If Jerry Slocum, in fact, has no title or interest in the shares of stock that Stevens sold to Crick Agency, then any “disclosure” will not prevent Crick Agency from availing itself of the protections of La.R.S. 12:601. To determine whether Slocum’s call to Crick constitutes a disclosure, this court must determine whether the transaction between Slocum and Stevens was a simulation or a sale, and this depends upon the intent of the parties, an issue of material fact that, in this ease, precludes summary judgment. In their depositions, Stevens and Slocum characterize the transaction between them differently. Slocum maintains that it was a simulation and Stevens insists that it was a sale. Civil Code Article 1848 clearly allows testimonial evidence to prove that an authentic act is a simulation. Thus, the question of whether the transaction between Stevens and Slocum was a sale or a simulation requires that, inter alia, the credibility of the parties be assessed. Thus, Crick Agency is not entitled to summary judgment.
J^BUFORD CRICK’S MOTION
Slocum contends that because Crick personally guaranteed the obligations of Crick Agency regarding the promissory notes related to the purchase of stock from Stevens, Crick is personally liable to Slocum. If this were a suit to enforce the promissory notes personally guaranteed by Crick, this court would agree. This suit, however, is not to enforce payment of the notes which Crick personally guaranteed. There is no evidence which gives Slocum any cause of action against Crick personally.
Corporate agents are generally not hable for corporate debts and the burden of establishing the contrary is on the corporate creditor. Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164 (La.1991). However, where the directors or officers of a corporation purport to bind themselves individually, they can incur personal liability for debts of the corporation. Riggins, supra, citing L.L. Ridgway Co. v. Marks, 146 So.2d 61 (La.App. 4 Cir.1962). Crick personally guaranteed the promissory notes used to purchase the stock from Stevens, and therefore he can be held liable, as a surety, for the payment of those notes. However, in this case the plaintiff who wishes to pierce the corporate veil is not *1160 a creditor of the corporation. Slocum has brought suit to be recognized as the owner of the stock that is in the possession of Crick Agency. If his suit is successful against Crick Agency, then Crick Agency will have to return the stock, a remedy that would not affect Crick. Slocum is not a creditor of Crick Agency, and in no event can Buford Crick be personally liable to Slocum for Crick Agency’s purchase of stock from Stevens.
J^SLOCUM-STEVENS
Slocum’s claim against Slocum-Stevens is equally tenuous. There is nothing in the record to indicate that Stevens was holding Slocum’s shares of stock, if in fact that was what he was doing, as a fiduciary of Sloeum-Stevens Corporation. Slocum-Stevens did not sell the stock to Crick, nor did Sloeum-Stevens profit from its sale. Slocum-Stevens cannot be liable to any present or former shareholder for a transaction in which it was not involved.
CONCLUSION
For the foregoing reasons, the judgment of the trial court denying summary judgment to the defendants Sloeum-Stevens Insurance Agency, Inc. and Buford Crick is reversed and all claims against those defendants are dismissed. The judgment of the trial court denying summary judgment to Crick Insurance Agency, Inc. is affirmed. This case is remanded to the district court for further proceedings. Two-thirds of the cost of this writ is to be paid by the plaintiff, one-third by the defendant, Crick Insurance Agency, Inc.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. Compare the words "undisclosed or latent legal or conventional title or interest” in LA.R.S. 12:601 with "without notice of any adverse claim" in LA.R.S. 10:8-302. Title 10 of the Louisiana Revised Statutes protects purchasers in good faith of certificated securities where the purchaser had no reason to know that he might be buying into litigation. La.R.S. 12:601, due to the necessity of analyzing the claimed ownership interest, offers little protection where disclosure of a claim has been made to the purchaser.